## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | Criminal No. 18-CR-339 |
| | § | |
| | § | <u>SIM LAKE</u> |
| v. | § | District Judge |
| | § | |
| | § | <u>Sheila Anderson</u>      <u>Lanie Smith</u> |
| CLINT CARR and | § | Case Manager      Court Reporter |
| HUGHEY FRAISAL | § | |
| | § | <u>Jury Trial</u> |
| Defendants. | § | Proceeding |

## DEFENDANT CLINT CARR'S OPPOSED MOTION TO DISMISS INDICTMENT

TO THE HONORABLE JUDGE OF SAID COURT:

Defendant Clint Carr ("Defendant Carr") files this Opposed Motion to Dismiss Indictment (the "Motion"):

### I.      PRELIMINARY STATEMENT

Defendant Carr recently has learned that the Government's self-described "Prosecution Team" has improperly reviewed a privileged, taped phone conversation between Defendant Carr and CC Pharmacy's corporate attorney. This inappropriate review has compromised his ability to mount an effective defense.  By virtue of violating the privilege, the Government is now intimately familiar, perhaps more than Defendant Carr, with a key element of his defense team's strategy regarding a central issue in the Government's conspiracy allegation: whether CC Pharmacy's attorney provided faulty legal advice about pharmacy operations upon which Defendant Carr, inexperienced in the law governing pharmacies, relied to his detriment.[1] As one example of its abuse, the Government's privilege violation has forced upon Carr the untenable choice of either mounting no defense to the Government's improper use of this information or defending against

---

[1] *See* **Exh. A**, Obituary of Don E. Lewis.

its use by waiving his fifth amendment rights and offering sworn testimony. The Government's irremediable conduct in this respect denies Defendant Carr due process and his right to effective counsel and compels the indictment's dismissal.

Moreover, the foregoing conduct is only one of many infringements on Defendant Carr's due process rights.  It is undisputed that the Government: (1) failed to notify the Court when applying for a seizure warrant the near certainty that its seizure would include privileged material; (2) failed to obtain any judicial oversight in the Prosecution Team's initial review of documents that assuredly would include privileged information; (3) failed to notify the Court when this initial review inevitably did identify privileged documents; (4) failed to notify the Court that it was intending to provide the documents to another group of Government attorneys for review; (5) failed to obtain judicial oversight of the Filter Team's review; (6) failed to provide Defendant Carr copies of any of the "potentially privileged" materials for more than thirty months after their seizure; and (7) failed to conduct any specific review of individual documents for privilege for four years.  This sloppy, careless and obfuscatory conduct alone, and certainly in conjunction with the improper review and use of the privileged phone call, likewise compels dismissal.

## II.      NATURE AND STATE OF PROCEEDINGS

This is an indicted case set for jury trial February 14, 2022.  This motion is dispositive.[2]

---

[2] At the docket call hearing (the "Hearing") on January 20, 2022, the Court directed Defendant Carr to file a motion on exhibits by Tuesday, January 25, 2022.  Dkt. 222-1, Docket Call Hearing Transcript, at 17:4-9.  Subsequent to the Hearing, Defendant Carr learned additional information that led his counsel to expand the scope of the motion beyond merely excluding exhibits, thus necessitating a filing on January 26, 2022.

### III.    ISSUE AND STANDARD OF REVIEW

The issue presented is whether the indictment must be dismissed due to irremediable errors committed by the Government.  Constitutional claims such as those raised in this motion would be reviewed by the Court of Appeals for the Fifth Circuit under a *de novo* standard.[3]

### IV.    FACTS

#### A. <u>The Government Indiscriminately Seized Materials It Should Have Known Were Privileged.</u>

On or about November 14, 2017, Drug Enforcement Administration (DEA) agents applied for and received authorization for search warrants on all three CC Pharmacy locations (the "Warrants"). The breadth of the warrants was considerable, authorizing the agents to seize virtually anything, including but not limited to the following:

1. Computer hardware, any and all tapes, computer disks, mobile devices, smart phones, hard disks, thumb drives and other computer relationship operational equipment;

2. Anything constituting, concerning, or relating to patient files and related clinic, pharmacy, or other medical records; electronic patient files;

3. Any invoices, order forms, credit memos, or any other documents related to the purchase, return or dispensation of controlled substances;

4. Personnel and payroll files and records;

5. Corporate and business records, articles of incorporation, resolutions, records regarding officers' duties and responsibilities, licensing records, property records, and ownership and corporate structure records;

6. U.S. currency, tax records, bills, billing records, cash receipt books, booking ledgers, investment or retirement account statements, and safe deposit boxes;

7. Bank and brokerage account monthly statements, opening records, checks, wire transfers, check registers; invoices, purchase orders, and credit card information; and

---

[3] *United States v. Diaz*, 941 F.3d 729, 738 (5th Cir. 2019).

8. Calendars, appointment books, telephone message pads, day planners, logs, correspondence, rolodexes, personal digital assistants (PDA's), and emails and address books; any and all telephone records, personal diaries, written correspondence or emails to, from, or between the owners or employees.[4]

On or about November 15, 2017, DEA agents executed the Warrants. From the Houston office alone, the Government seized 15 boxes of documents, 8 computers, 2 iPads, 3 external hard drives, and 1 computer server.[5] The Government took no precautions to identify and/or segregate potentially privileged documents.

**B.  The Government Grossly Mishandled Privilege Review.**

Despite the Warrants' breadth, the Government ***took no precautions regarding the treatment of privileged communications*** during the search and seizure.[6]  This apparently did not change once the Prosecution Team became involved. According to the Government, the "Prosecution Team" began its review at some point after the November 15, 2017 seizure.[7] Not surprisingly, it identified materials that it deemed potentially privileged.[8] Apparently, it was only then that the Prosecution Team "instituted" a "Filter Team."[9] To this day, Defendant Carr does not know what privileged documents or data the Prosecution Team reviewed that caused them unilaterally to institute a Filter Team, or how the "Prosecution Team" determined which documents to provide to the "Filter Team."

---

[4] *See* **Exh. B**, Dkt. 1 of Case No. 4:17-mj-01719, *In the Matter of the Search of CC Pharmacy, 2656 South Loop West, Suite 395, Houston, Texas 77054* (November 14, 2017 Application for a Search Warrant, at pp. 3-7).
[5] *See* **Exh. C**, Dkt. 4, Case No. 4:17-mj-01719, *In the Matter of the Search of CC Pharmacy, 2656 South Loop West, Suite 395, Houston, Texas 77054 (*Search Warrant Return, entered Dec. 6, 2017).
[6] *See* **Exh. B**, Dkt. 1 of Case No. 4:17-mj-01719, *In the Matter of the Search of CC Pharmacy, 2656 South Loop West, Suite 395, Houston, Texas 77054* (November 14, 2017 Application for a Search Warrant).
[7] Dkt. 209, Government's Motion, at p. 4.
[8] *Id.*
[9] The absence of any judicial oversight of the seizure of privileged materials and subsequent review of those materials was improper.  *In re Search Warrant Issued June 13, 2019*, 942 F.3d 159, 178 (4th Cir. 2019) (emphasizing the need to keep the court fully informed of potentially privileged items seized as well as judicial oversight of the privilege review process).

The Government's mishandling of privileged materials did not end there. When the Prosecution finally had its Filter Team in place, the Government assured Defendant Carr that this "team" would busily conduct a "filter review for potentially privileged material."[10]  Based on these assurances, Defendant Carr reasonably assumed the Filter Team would review in timely fashion all the seized documents for privileged information to avoid turning over privileged information to the Prosecution Team. The Filter Team's additional task was to present the Court with a compendium of any possibly privileged documents so the Court could, again in timely fashion, rule on the privilege issues. Timeliness of the Filter Team's work was critical to defense counsel's preparation of Defendant Carr's case and, thus, critical to his due process rights.

However, nearly two years after receiving such assurances and over four years after the initial seizure, the Filter Team's counsel informed Defendant Carr's counsel on January 7, 2022, that"[t]he Filter Team did not individually review [270,378] files for privilege . . .."[11]  Even more serious was its acknowledgement that CC Pharmacy was an "ostensible privilege holder" of these files.[12]

Then, finding itself on the eve of the January 24,2022 trial setting, the Filter Team asked the Court for permission to simply give the Prosecution Team everything, cloaked by the bogus claim that CC Pharmacy has waived the privilege.  The Filter Team  blithely informed Defendant Carr and his counsel that CC Pharmacy's dissolution and forfeiture waived its attorney-client privilege, and thus no review for privilege was necessary.  Defendant Carr disagrees and requests judicial relief to address this Government  misconduct.

---

[10] *See* **Exh. D**, February 20, 2020 Email from D. Helfmeyer to all Defense Counsel.
[11] *See* **Exh. E**, Email correspondence between T. Coley and M. Wynne, at p. 1.
[12] *See* **Exh. E**, Email correspondence between T. Coley and M. Wynne at p. 3.

Consistent with its inappropriate and disingenuous approach, the Government, two business days before the then-trial setting of January 24, 2022, for the first time requested that Defendant Carr and his counsel should perform the Filter Team's functions and review the 270,378 files (more than 440,000 pages).[13]

**C**.  **The Prosecution Team Improperly Reviewed Privileged Telephone Conversations.**

On June 24, 2021, the Filter team produced to Defendant Carr four audio recordings that, by the Government's own admission, captured or referenced communications between Defendant Carr and CC Pharmacy counsel.[14]

On October 29, 2021, Filter Team counsel indicated an intention to move the Court for authorization to release the four recordings to the Prosecution Team.[15] Filter Team counsel affirmed his understanding that Defendant Carr claimed privilege over these recordings. Defendant Carr's counsel responded the same day indicating unequivocally that Defendant Carr "was opposed" to any such motion.[16]

On November 1, 2021, the Government filed a Motion for Authorization to Release Four Telephone Recordings Subject to Privilege Assertion.[17]   In doing so, the Government (1) deliberately chose not to indicate Carr's opposition in the title of the pleading (e.g., "Opposed Motion"); (2) deliberately chose not to select the electronic "Opposed" designation in the ECF's drop-down menu at the time of filing; and (3) deliberately chose to ignore Criminal Local Rule 12.2 by failing to include a certificate of conference that the parties had conferred but could not reach agreement on the disposition of the motion. Instead, the Government buried notice of Carr's

---

[13] Dkt. 222-1, Docket Call Hearing Transcript, at 17:19-18:1.
[14] *See* **Exh. F**, June 24, 2021 cover letter from Filter Team to Carr counsel; **Exh. H**, September 14, 2021 email from Filter Team counsel to Carr Counsel, at p. 1.
[15] *See* **Exh. G**, October 29, 2021 email from Filter Team to Carr counsel.
[16] *Id.*
[17] Dkt. 168.

opposition in the last sentence of *footnote 5* on pg. 2 of the Motion. The failure to abide by the rules requiring clear designation that the Motion was opposed as well as the use of the footnote appear to manifest an intention to mislead this Court.  Indeed, the Court granted Defendant's Motion promptly the next day on the reasonable assumption, in view of the Government's pleading, that the Motion was unopposed.[18]

Defendant Carr anticipates that, had the Government properly notified the Court of Defendant Carr's opposition, the Court would have allowed time for Defendant Carr to file a response. Indeed, given that the damage from disclosing privileged information to an adverse party can be irreversible, it is likely that the Court, even if ultimately deciding to grant the Government motion after reviewing arguments from both sides, would have entertained a request by Defendant Carr to delay release of the recordings until he had an opportunity to seek appellate relief from the Court's Order.  Unfortunately, the Government's actions prevented any such remedial measures. The unqualified authorization to immediately release privileged information is a bell that cannot be un-rung.

## V.   ARGUMENT AND AUTHORITIES

### A. The Government's Disclosure of Privileged Telephone Calls Warrants the Indictment's Dismissal

#### 1. The Government's Disclosure was Wrong.

The only reasonable interpretation of the facts establish that the Government misled the Court to believe its Motion to Authorize Release was unopposed. Accordingly, the disclosure to the Prosecution Team of these Recordings was effectively unauthorized.  The Criminal Local Rules for the Southern District of Texas must include "an averment that the movant has conferred with the respondent, but that an agreement cannot be reached on the disposition of the motion." In

---

[18] Dkt. 222-1, Docket Call Hearing Transcript, at 15:24 -16:15.

the usual case a local rules violation would require an order striking the motion.[19]   Here, however, the Government's disregard of the local rules has effectively abrogated Defendant Carr's right to his Sixth Amendment right to counsel and his Fifth Amendment right to due process of law: the Government has by subterfuge secured access to privileged evidence, thereby undermining Defendant Carr's ability to present his defense.

## 2.   The Government's Disclosure and Review Substantially Prejudiced Defendant Carr's Case.

In *State v. Bain*, 872 N.W.2d 777 (Neb. 2016), the Supreme Court of Nebraska observes:

> In an adversarial system of justice, a defendant's ability to keep privileged communications with counsel insulated from the prosecution also protects the defendant's Sixth Amendment right to effective assistance of counsel. Many federal and state courts have recognized that "the essence of the Sixth Amendment right is, indeed, privacy of communication with counsel." We agree. It is true that courts have not recognized the attorney-client privilege as a right guaranteed by the Sixth Amendment. But government interference in the confidential relationship between a defendant and his or her attorney can implicate the Sixth Amendment right to counsel.[20]

The *Bain* Court concluded that it would analyze potential disclosures of a defendant's confidential communications as it would a defense attorney's potential conflicts of interests.[21]   Applying these principles, the Supreme Court of Nebraska vacated Bain's convictions and remanded the case because the trial court's procedures did not ensure that Bain had a fair trial.[22]   These authorities are instructive here.

---

[19] CrLR 12.2 (*See United States v. Beltran*, 2021 WL 84375, slip op. p. 2 (S.D. Tex. 2021) and *United States v. De La Fuente*, 2006 WL 8438192, slip op. p. 2 (S.D. Tex. 2006)).

[20] *Bain*, 877 N.W.2d at 783-784 (citing *inter alia United States v. Rosner*, 485 F.2d 1213, 1224 (2d Cir. 1973); *Glasser v. United States*, 315 U.S. 60 (1942); *United States v. Dyer*, 821 F.2d 35 (1st Cir. 1987); *United States v. Brugman*, 655 F.2d 540 (4th Cir. 1981); *United States v. Levy*, 577 F.2d 200 (3d Cir. 1978); and *Weatherford v. Bursey*, 429 U.S. 545 (1977)).

[21] *Id.*, at 874.

[22] *Id. See also State v. Robinson*, 209 A.3d 25, 46-62 (Delaware 2019) (right to counsel violated by warrantless seizure of documents); *State v. Wong*, 40 P.3d 914, 924-930 (Hawaii 2002) (use of privileged material before the grand jury);

Defendant Carr is delivering copies of the four recordings to the Court in chambers, with a courtesy copy of this filing.  The most problematic is labeled "Recording 1." The recording amounts to deceased CC Pharmacy Attorney Don Lewis's legal advice to Defendant Carr and co-defendant Curry after the DEA stopped employee Jeremy Newberry in Roundrock while he transported controlled substances from one CC Pharmacy location to another without necessary documentation.  The late Attorney Lewis advises Defendant Carr and Curry  how to respond and how to tell their Roundrock pharmacy employee, Megan Hanson, to respond to the authorities.

It is reasonable to think that the Government used the contents of that phone call to secure the guilty  pleas of defendants Curry and Hassan Barnes and, one can reliably estimate, to prepare these two witnesses and perhaps others to testify in the Government's case against Defendant Carr. In the face of this unfair advantage, Defendant Carr has an untenable choice. He can do nothing and allow the Government to use and benefit at trial from these privileged communications or he can waive his fifth amendment rights and provide sworn testimony of the call's contents and context, in order to counter the Government's interpretation of what are clearly ambiguous, privileged communications. This Catch 22 resulting from the Government's violation of the privilege is irremediable and justifies dismissal of the indictment against Defendant Carr.

The Government may argue that Defendant Carr could call Attorney Lewis to clarify the context and contents of the phone call instead of testifying himself.  But Attorney Lewis died unbeknownst to Defendant Carr's counsel in 2020.  The Government knew this and did not bother to share this information with Defendant Carr until last week.  In fact, Defendant Carr's counsel had Attorney Lewis on its witness less until he recently learned of Attorney Lewis' death.

---

*State v. Lenarz*, 22 A.3d 536, 542-558 (Conn. 2011) (interference with defense strategy based on attorney-client material discovered on defendant's computer); *but see United States v. DeLuca*, 663 Fed. Appx. 875, 878-881 (11th Cir. 2016) (dismissal of indictment inappropriate absent proof of demonstrable prejudice or substantial threat thereof).

Moreover, even if Defendant Carr could call Attorney Lewis, the Government's use of the privileged communications still places Defendant Carr in the position of either doing nothing himself to rebut that use or waiving his privilege by doing do with sworn testimony.

## B.  The Court May Fashion a Remedy to Suit the Circumstances.

This situation is likely unprecedented.  Defendant Carr has set out in prior (recent) briefing skepticism in recent leading authority about the Government's use of filter teams, however well originally intended.[23]  To that end, the Fifth Circuit has noted that jurisdiction exists for a court to exercise authority over its officers in exercising their police power.[24]  In analogous situations, a finding that the government "callously disregarded" a person's constitutional rights may trigger numerous remedies.[25]

## VI.    CONCLUSION

Here, the bell cannot be un-rung.

The Government's failure to follow proper protocol in segregating and reviewing privileged materials, including its failure to obtain judicial oversight in both its seizure and subsequent review, has violated Carr's due process rights.

Defendant Carr requests that the Indictment be dismissed and requests such other relief to which he may be entitled.

---

[23] See Dkt. 222, incorporated herein by reference.

[24] *See United States v. Search of Law Offices, Residence, and Storage Unit of Alan Brown*, 341 F.3d 404, 409 (5th Cir. 2011) (citing *Hunsucker v. Phinney*, 497 F.2d 29, 30-35 (5th Cir. 1974)).

[25] *Cf.* Fed. R. Crim. P. 41, Notes Advisory Committee on Rules – 1989 Amendment; *United States v. Comprehensive Drug Testing Inc.*, 621 F.3d 1162, 1172-73 (9th Cir. 2010) (en banc) (per curiam) (overruled in part on other grounds as recognized by *Demaree v. Pederson*, 887 F.3d 870, 876 (9th Cir. 2018) (per curiam); *cf. In Re. United States of America's Application for a Search Warrant to Seize and Search Electronic Devices for Edward Cunnius*, 770 F. Supp. 2d 1138, 1143 (W.D. Wash. 2014) (describing and analyzing the general warrant).

Respectfully submitted,

GREGOR | WYNNE | ARNEY, PLLC

By: /s/ *Michael J. Wynne*
    Michael J. Wynne
    Texas State Bar No. 00785289
    SDTX No. 00018569
    James L. Turner
    Texas State Bar No. 20316950
    909 Fannin Street, Suite 3800
    Houston, TX 77010
    Telephone: (281) 450-7403
    mwynne@gwafirm.com
    jturner@gwafirm.com

and

HUGHES ARRELL KINCHEN LLP

By: /s/ *John B. Kinchen*
    John B. Kinchen
    Federal ID No. 00018184
    Texas State Bar No. 00791027
    jkinchen@hakllp.com
1221 McKinney Street, Suite 3150
Houston, Texas 77010
Telephone: 713.403.2064
Facsimile: 713.568.1747

**COUNSEL FOR DEFENDANT CLINT CARR**

## **CERTIFICATE OF CONFERENCE**

I certify that I have communicated with lead counsel for the United States and that the United Stated is opposed to this motion.

By:  /s/ *Michael J. Wynne*
Michael J. Wynne

## **CERTIFICATE OF SERVICE**

I certify that a true and correct copy of this document was served upon counsel of record on this 26th day of January 2022.

By:  /s/ *Michael J. Wynne*
Michael J. Wynne