# EXHIBIT I

:triangular_flag_on_post: KeyCite Yellow Flag - Negative Treatment
Declined to Follow by   State ex rel. Healea v. Tucker,   Mo.App. E.D.,   June 6, 2017

292 Neb. 398
Supreme Court of Nebraska.

STATE of Nebraska, appellee,
v.
Tyler C. BAIN, appellant.

No. S–14–638
|
Filed January 8, 2016

**Synopsis**
**Background:** Defendant was convicted in the District Court, Custer County, Karin L. Noakes, J., of kidnapping and other offenses. Defendant appealed.

**Holdings:** The Supreme Court, Connolly, J., held that:

[1] a presumption of prejudice from a violation of the Sixth Amendment right to counsel arises when the state becomes privy to a defendant's confidential trial strategy;

[2] when that presumption arises, the state must prove by clear and convincing evidence that the defendant was not prejudiced by the disclosure; and

[3] when a court is presented with evidence that the state has become privy to a defendant's confidential trial strategy, it must sua sponte conduct an evidentiary hearing.

Reversed and vacated.

West Headnotes (18)

[1]   **Criminal Law** :key: Review De Novo
Whether a state intrusion into the attorney-client relationship should constitute a per se violation of the Sixth Amendment, and the action that a court should take when it becomes aware of such an intrusion, present questions of law that an appellate court reviews de novo. U.S. Const. Amend. 6.

[2]   **Criminal Law** :key: Right of Defendant to Counsel
The right to counsel exists to protect the fundamental right to a fair trial. U.S. Const. Amend. 6.

1 Cases that cite this headnote

[3]   **Criminal Law** :key: Conflict of Interest
The Sixth Amendment guarantees the right to representation that is free from conflicts of interest. U.S. Const. Amend. 6.

[4]   **Criminal Law** :key: Advice, inquiry, and determination
To protect Sixth Amendment right to conflict-free counsel, a trial court must hold a hearing and inquire into a defense counsel's potential conflict of interest when the court knows or reasonably should know that a particular conflict exists, even in the absence of an objection. U.S. Const. Amend. 6.

[5]   **Criminal Law** :key: Counsel for accused
      **Criminal Law** :key: Right of defendant to counsel
If a trial court had a duty to inquire because a potential conflict of interest on part of defense counsel was apparent, an appellate court has discretion to consider the issue and remand a cause for a hearing into the matter, even if the defendant did not raise the issue. U.S. Const. Amend. 6.

[6]   **Criminal Law** :key: Counsel for accused
A defendant can raise his or her attorney's conflict of interest for the first time on appeal if the defendant shows that an actual conflict existed and that it adversely affected the attorney's performance. U.S. Const. Amend. 6.

[7]   **Criminal Law**  Consultation with counsel; privacy

A defendant's ability to keep **privileged** communications with counsel insulated from the prosecution also protects the defendant's Sixth Amendment right to effective assistance of counsel. U.S. Const. Amend. 6.

[8]   **Criminal Law**  Consultation with counsel; privacy

The essence of the Sixth Amendment right to effective assistance is privacy of communication with counsel. U.S. Const. Amend. 6.

[9]   **Criminal Law**  Interference in **attorney**-**client** relationship

Although the **attorney**-**client** **privilege** has not been recognized as a right guaranteed by the Sixth Amendment, government interference in the confidential relationship between a defendant and his or her attorney can implicate the Sixth Amendment right to counsel. U.S. Const. Amend. 6.

[10]  **Criminal Law**  Right to counsel

The principles governing appellate review for a defense attorney's potential conflicts of interest also apply to potential disclosures of a defendant's **privileged** communications to the **state**.

[11]  **Criminal Law**  Counsel for accused

When a trial court learns of facts that make a potential Sixth Amendment right to counsel **violation** apparent, the issue is properly presented to an appellate court on appeal, even if it was not raised at trial. U.S. Const. Amend. 6.

[12]  **Criminal Law**  Prejudice and presumptions

A presumption of prejudice to the Sixth Amendment right to counsel arises when the **state** becomes privy to a defendant's confidential trial strategy. U.S. Const. Amend. 6.

2 Cases that cite this headnote

[13]  **Criminal Law**  Prejudice and presumptions

The presumption of prejudice to the Sixth Amendment right to counsel that arises when the **state** becomes privy to a defendant's confidential trial strategy is rebuttable, at least when the **state** did not deliberately intrude into the **attorney**-**client** relationship. U.S. Const. Amend. 6.

2 Cases that cite this headnote

[14]  **Criminal Law**  Degree of proof

The standard of proof functions to instruct fact finders about the degree of confidence that society believes they should have in the correctness of their factual conclusions for a particular type of adjudication; it serves to allocate the risk of error between the litigants and to indicate the relative importance attached to the ultimate decision.

[15]  **Criminal Law**  Degree of proof
      **Evidence**  Degree of Proof in General

In cases involving individual rights, whether criminal or civil, the principal consideration in determining the proper standard of proof is whether the standard minimally reflects the value society places on individual liberty, because the function of legal process is to minimize the risk of erroneous decisions.

[16]  **Criminal Law**  Prejudice and presumptions

When a presumption of prejudice to defendant's Sixth Amendment right to counsel arises because the **state** has obtained a defendant's confidential trial strategy, the **state** must prove by clear and convincing evidence that the defendant was not

prejudiced by the disclosure. U.S. Const. Amend. 6.

1 Cases that cite this headnote

[17] **Criminal Law** 🔑 Remedies

Sorting procedure that trial court ordered disqualified prosecutor to follow, in separating materials in state's possession that bore on defendant's confidential trial strategy from remainder of state's materials before giving materials to newly appointed prosecutor, was inadequate to rebut presumption of prejudice to defendant's right to counsel arising from disclosure of defendant's trial strategy to state; that procedure could not ensure that state had not already used confidential information to develop evidence or witnesses or to otherwise gain an advantage or make decisions detrimental to defendant. U.S. Const. Amend. 6.

1 Cases that cite this headnote

[18] **Criminal Law** 🔑 Remedies

When a court is presented with evidence that the state has become privy to a defendant's confidential trial strategy, it must sua sponte conduct an evidentiary hearing that requires the state to prove the defendant's Sixth Amendment right to counsel was not prejudiced by the disclosure and that provides the defendant with an opportunity to challenge the state's proof. U.S. Const. Amend. 6.

1 Cases that cite this headnote

*Syllabus by the Court*

**\*398** 1. **Constitutional Law: Attorney and Client: Appeal and Error.** Whether a state intrusion into the attorney-client relationship should constitute a per se violation of the Sixth Amendment and the action that a court should take when it becomes aware of such an intrusion present questions of law that an appellate court reviews de novo.

2. **Constitutional Law: Criminal Law: Right to Counsel.** The Sixth Amendment to the U.S. Constitution guarantees every criminal defendant the right to effective assistance of counsel. The right to counsel exists to protect the fundamental right to a fair trial.

3. **Constitutional Law: Attorney and Client: Effectiveness of Counsel.** A defendant's ability to keep privileged communications with counsel insulated from the prosecution also protects the defendant's Sixth Amendment right to effective assistance of counsel.

4. **Constitutional Law: Attorney and Client.** The essence of the Sixth Amendment right is privacy of communication with counsel.

5. **Constitutional Law: Attorney and Client: Right to Counsel.** Although the attorney-client privilege has not been recognized as a right guaranteed by the Sixth Amendment, government interference in the confidential relationship between a defendant and his or her attorney can implicate the Sixth Amendment right to counsel.

6. **Attorneys at Law: Conflict of Interest: Appeal and Error.** The principles governing appellate review for a defense attorney's potential conflicts of interest also apply to potential disclosures of a defendant's privileged communications to the State.

7. **Constitutional Law: Trial: Appeal and Error.** When a trial court learns of facts that make a potential Sixth Amendment violation apparent, the issue is properly presented to an appellate court on appeal, even if it was not raised at trial.

**\*399** 8. **Trial: Attorney and Client: Presumptions.** A presumption of prejudice arises when the State becomes privy to a defendant's confidential trial strategy.

9. **Trial: Attorney and Client: Presumptions.** The presumption of prejudice that arises when the State becomes privy to a defendant's confidential trial strategy is rebuttable —at least when the State did not deliberately intrude into the attorney-client relationship.

10. **Actions: Proof.** The standard of proof functions to instruct fact finders about the degree of confidence our society believes they should have in the correctness of their factual conclusions for a particular type of adjudication. It serves to

allocate the risk of error between the litigants and to indicate the relative importance attached to the ultimate decision.

11. **Constitutional Law: Proof.** In cases involving individual rights, whether criminal or civil, the principle consideration in determining the proper standard of proof is whether the standard minimally reflects the value society places on individual liberty, because the function of legal process is to minimize the risk of erroneous decisions.

12. **Trial: Presumptions: Proof.** When a presumption of prejudice arises because the State has obtained a defendant's confidential trial strategy, the State must prove by clear and convincing evidence **\*\*780** that the defendant was not prejudiced by the disclosure.

13. **Trial: Evidence: Proof.** When a court is presented with evidence that the State has become privy to a defendant's confidential trial strategy, it must sua sponte conduct an evidentiary hearing that requires the State to prove the defendant was not prejudiced by the disclosure and that provides the defendant with an opportunity to challenge the State's proof.

**\*\*779** Appeal from the District Court for Custer County: KARIN L. NOAKES, Judge. Reversed and vacated.

**Attorneys and Law Firms**

James Martin Davis, of Davis Law Office, Lincoln, for appellant.

Douglas J. Peterson, Attorney General, and James D. Smith, Lincoln, for appellee.

Heavican, C.J., Wright, Connolly, McCormack, Miller–Lerman, and Cassel, JJ., and Irwin, Judge.

Connolly, J.

I. SUMMARY

A jury found the appellant, Tyler C. Bain, guilty of four felonies stemming from his assaults of his former wife **\*400** with whom he was living: kidnapping, first degree sexual assault, second degree assault, and making terroristic threats. Regarding the kidnapping conviction, the court found that statutory mitigating circumstances did not exist. It convicted Bain of a Class IA felony for kidnapping and sentenced him to life imprisonment.

Bain contends that the State violated his Sixth Amendment right to counsel because at least five prosecutors had possession of his confidential trial strategy before his trial. We conclude that when Bain's confidential trial strategy was disclosed to prosecuting attorneys, a rebuttable presumption arose that Bain's trial was tainted by a Sixth Amendment violation. Because the court's remedy was insufficient to rebut this presumption and ensure that Bain received a fair trial, we reverse the judgment and vacate Bain's convictions. And because we vacate Bain's convictions, we do not consider his other assignments of error.

II. BACKGROUND

Bain's Sixth Amendment claim stems from a series of prosecutors who saw confidential communications between Bain and his originally retained counsel. The disclosure disqualified them from prosecuting because the communications discussed Bain's trial strategy. The actual communications are not in the record because the court failed to conduct an evidentiary hearing or receive the communications as evidence.

In January 2012, Bain appeared in district court for an arraignment on the State's amended charges. Rodney Palmer, his retained counsel, appeared with him. In March, Bain moved the court to appoint Palmer as his counsel because Palmer was familiar with his case and Bain had depleted his assets. At the hearing, the deputy county attorney, Glenn Clark, objected that Palmer's appointment would force the county to pay Palmer's travel time and expenses. The court overruled the motion because Palmer was currently representing Bain.

About a month later, at an April 2012 hearing on Palmer's motion to withdraw, Clark stated, in response to the court's **\*401** question, that his office had no objection to Palmer's withdrawal. The court then asked Steven Bowers, an attorney who was present in the courtroom, whether he had any conflict in representing Bain. When Bowers said no, the court appointed him **\*\*781** because "[h]e is a local attorney and you [Bain] can meet with him today."

Later, in September 2012, after representing Bain for 5 months, Bowers moved to withdraw as Bain's counsel

because he had been hired by the Custer County Attorney's office. At the hearing, Clark informed the court that someone from the Attorney General's office would prosecute the charges. Later that month, the court appointed P. Stephen Potter from Gothenburg, Nebraska, to represent Bain.

About 2 months after Bowers moved to withdraw, in November 2012, the court allowed the county attorney and deputy attorneys to withdraw because of the conflict created by the county attorney's hiring of Bowers. Clark reported that he had given the county attorney's case files to the Attorney General's office. The court appointed attorneys from the Attorney General's office to prosecute.

Eight months later, in August 2013, the court heard a motion from Matt Lierman, an assistant attorney general, to allow that office's attorneys to withdraw as prosecutors because of a conflict of interest. Lierman informed the court that while going through the discovery materials that he had received from the county attorney's office, he saw confidential communications between Bain and Palmer, Bain's original attorney. Lierman reported that he had sealed the confidential documents in a tamper-proof envelope so that no one else could access them, and he asked the court to keep them sealed. The court sustained his motion to withdraw. As stated, the confidential communications are not part of this record.

On August 29, 2013, the court appointed Shawn Eatherton as special prosecutor. But on September 6, the court entered an order stating that it had conducted a telephonic hearing with Eatherton and found that Eatherton had a conflict of interest. It appointed Lynelle Homolka as special prosecutor.

 *402 About a month later, the court conducted a recorded telephonic hearing with Homolka, Bain, and Potter after Homolka notified the court that she might also have a conflict. Homolka said that while reviewing the materials provided by the Custer County Attorney, she had found "what I suspected to be confidential statements and general communications that could reveal among other things that I believe would be the defendant's trial strategy." Potter said he had seen the materials and agreed that Homolka had seen confidential information and had a duty to withdraw.

The court sustained Homolka's motion to withdraw, but it appointed her as an expert and directed her to separate the privileged information in her possession so that "this doesn't occur again." The court further directed that after sorting the materials, Homolka should give them to Potter so that he and Bain could "make sure that nothing gets into the State's hands this time that shouldn't be." The court directed Potter to consult with Homolka and to ask for an in camera hearing if any further disputes arose over the State's materials. After reviewing the State's materials, the court directed Potter to forward the case file to the new prosecutor, minus any confidential or privileged information. On September 27, 2013, the court appointed John Marsh as special prosecutor.

In October 2013, the court heard Marsh's motion for a continuance. At the hearing, Potter told the court that he had received a box of materials from Homolka and had gone through the box and the packet of "excluded evidence." He had removed the excluded packet and intended to deliver the remaining materials to Marsh that day.

 **782 About 4 months later, with Marsh representing the State and Potter representing Bain, the court impaneled a jury. The State tried Bain on the following charges: kidnapping, first degree sexual assault, second degree assault, terroristic threats, and use of a deadly weapon to commit a felony. The jury found Bain guilty of kidnapping, first degree sexual assault, second degree assault, and making terroristic threats. It acquitted him of using a deadly weapon to commit a felony.

 *403 After accepting these verdicts, the court found that no mitigating circumstances existed to reduce a kidnapping conviction from a Class IA felony to a Class II felony. It sentenced Bain to life imprisonment for kidnapping. Consecutive to his life sentence, the court sentenced Bain to aggregate concurrent sentences of 20 to 25 years' imprisonment for first degree sexual assault, second degree assault, and making terroristic threats.

III. ASSIGNMENTS OF ERROR

Bain assigns that the State violated his Sixth Amendment right to effective assistance of counsel—including his right to confidential communications with his counsel and the right to have appointment of trial counsel without the interference of the prosecutor. He also assigns that the court erred in failing to find the presence of mitigating factors under the kidnapping statute, Neb.Rev.Stat. § 28–313(3) (Reissue 2008), and convicting him of a Class IA felony under § 28–313(2). He contends the evidence was insufficient to support that conviction.

### IV. STANDARD OF REVIEW

**[1]** We are asked to decide whether a **prosecutor's** undisputed possession of a defendant's confidential trial strategy should constitute a per se **violation** of the Sixth Amendment—even if the court later appointed a different attorney to prosecute. Whether a **state** intrusion into the **attorney**-**client** relationship should constitute a per se **violation** of the Sixth Amendment and the action that a court should take when it becomes aware of such an intrusion present questions of law that we review de novo.

### V. ANALYSIS

#### 1. PARTIES' CONTENTIONS

Bain contends that the **State's** intrusion into his confidential communications with his defense counsel is a Sixth Amendment **violation** that is presumptively prejudicial and *404 requires **dismissal** of the charges. He argues that the court's order that required a disqualified **prosecutor** to sort through the case file to identify and remove **privileged** communications did not cure the presumed prejudice. He argues that the **State** has the burden to prove the absence of prejudice from this type of **violation** and that it would be impossible for a court to determine whether **prosecutors** had planned their strategies, gathered evidence, and prepped witnesses from their knowledge of Bain's defense strategies.

The **State** argues that Bain's Sixth Amendment claims fail because (1) he never raised a Sixth Amendment **violation** to the trial court; (2) the prosecution did not intentionally obtain Bain's confidential information; (3) Marsh, the special **prosecutor** who tried the case, never received any communication of Bain's defense strategy; and (4) the **State** used no tainted evidence in the trial.

#### 2. AN APPARENT SIXTH AMENDMENT **VIOLATION** BASED **ON** THE **STATE'S** INTRUSION INTO THE **ATTORNEY**–**CLIENT** RELATIONSHIP CAN BE PROPERLY RAISED ON APPEAL

**[2]** Initially, we reject the **State's** argument that Bain's Sixth Amendment claim **783 fails because he did not raise it to the trial court. The Sixth Amendment to the U.S. Constitution guarantees every criminal defendant the right to effective assistance of counsel.[1] The right to counsel exists to protect the fundamental right to a fair trial.[2]

Courts have recognized that two unrelated Sixth Amendment **violations** have a significant potential to deprive a defendant of effective assistance of counsel: (1) a defense counsel's conflict of interest in representing a defendant and (2) a government intrusion into a defendant's confidential communications *405 with his counsel about trial strategy. Courts have more often discussed when an appellate court will review a claim that a defense counsel was operating under a conflict of interest for the first time on appeal. Because we conclude that the same appellate review principles should apply to claims of **state** intrusions into **privileged** communications, we first discuss the principles that courts have applied in conflict of interest cases.

**[3] [4] [5] [6]** As implied, the Sixth Amendment guarantees the right to representation that is free from conflicts of interest.[3] To protect this right, a trial court must hold a hearing and inquire into a defense counsel's potential conflict of interest when the court knows or reasonably should know that a particular conflict exists, even in the absence of an objection.[4] And if a trial court had a duty to inquire because a potential conflict was apparent, an appellate court has discretion to consider the issue and remand a cause for a hearing into the matter. This is true even if the defendant did not raise the issue.[5] Also, a defendant can raise his or her attorney's conflict of interest for the first time on appeal if the defendant shows that an actual conflict existed and that it adversely affected the attorney's performance.[6]

**[7] [8] [9] [10]** In an adversarial system of justice, a defendant's ability to keep **privileged** communications with counsel insulated from the prosecution also protects the defendant's Sixth Amendment right to effective assistance of counsel. Many federal and **state** courts have recognized that "the essence of *406 the Sixth Amendment right is, indeed, privacy of communication with counsel."[7] We agree. It is true that courts have not recognized the **attorney**-**client** **privilege** as a right guaranteed by the Sixth Amendment. But government interference in the confidential relationship **784 between a defendant and his or her attorney can implicate the Sixth Amendment right to counsel.[8] So we conclude that the principles governing appellate review for a defense attorney's potential conflicts of interest also

apply to potential disclosures of a defendant's **privileged** communications to the **State**.

 [11]  Here, the court knew that the disqualified **prosecutors** had reviewed Bain's confidential trial strategy. As we will explain more fully, the **State's** knowledge of that strategy was sufficient to require an evidentiary hearing into whether the **State** had **violated** Bain's right to counsel and, if so, the appropriate remedy. Because the court had learned of facts that made a potential Sixth Amendment **violation** apparent, the issue is properly presented to us on appeal, even if it was not raised at trial.

### 3. FEDERAL AND **STATE** DECISIONS RECOGNIZE AN INHERENT UNFAIRNESS IN THE GOVERNMENT'S POSSESSION OF A DEFENDANT'S TRIAL STRATEGY

#### (a) U.S. Supreme Court Precedent

Our starting point is *Weatherford v. Bursey*.[9] There, the U.S. Supreme Court considered a civil rights action in which the **\*407** plaintiff, Bursey, alleged that a **state** undercover agent had **violated** his Sixth Amendment right to counsel by participating in discussions between Bursey and his attorney. The agent had ostensibly participated in a crime with Bursey and was arrested with him. Later, posing as a codefendant to maintain his cover, he agreed to meet with Bursey and his attorney before trial. The agent said that he would ask for a separate trial and would not testify against Bursey. Although the agent had not planned to testify, after he was seen with the police, the **prosecutor** decided to call him. The agent testified about his undercover work but not about any information that he had learned from the **attorney**-**client** discussions. No evidence showed that the agent had provided Bursey's trial strategy to his superiors or to the prosecution.

The majority rejected the Fourth Circuit's per se rule that an undercover agent cannot meet with a defendant's counsel without **violating** the Sixth Amendment. Under that per se rule, whenever the prosecution knowingly arranged or permitted an intrusion into the **attorney**-**client** relationship, the right to counsel would have been sufficiently threatened to require reversal and a new trial. And the per se rule would have applied regardless of the government's purpose and without a showing of prejudice to the defense. In reversing, the U.S. Supreme Court was concerned that the Fourth Circuit's per se rule would effectively expose undercover agents because they would always have to refuse requests to attend meetings with defense counsel.[10]

Instead, the Court emphasized two facts. First, the agent had been placed in an awkward position by the request to meet with defense counsel and had not purposefully obtained Bursey's trial strategy. Second, he had not communicated it to the **prosecutor** or his staff.[11] It concluded its previous cases at most showed that when a conversation with counsel has been overheard,

**\*408** the constitutionality of the conviction depends on whether the overheard conversations **\*\*785** have produced, directly or indirectly, any of the evidence offered at trial. This is a far cry from the *per se* rule announced by the Court of Appeals below, for under that rule trial prejudice to the defendant is deemed irrelevant.[12]

But the U.S. Supreme Court suggested four factual circumstances that strongly indicate a Sixth Amendment **violation**:

> [1] Had [the agent] testified at Bursey's trial as to the conversation between Bursey and [his attorney]; [2] had any of the **State's** evidence originated in these conversations; [3] had those overheard conversations been used in any other way to the substantial detriment of Bursey; or even [4] had the prosecution learned from [the agent] the details of the [**attorney**-**client**] conversations about trial preparations, Bursey would have a much stronger case.[13]

In *Weatherford,* the government did not violate the defendant's right to counsel because "[n]one of these elements [were] present...." [14] "[U]nless [the agent] communicated the substance of the [attorney-client] conversations and thereby created at least a realistic possibility of injury to Bursey or benefit to the State, there can be no Sixth Amendment violation." [15] This realistic threat of injury means that actual prejudice need not be shown; a substantial threat of prejudice is sufficient. Specifically, because the district court found that the information the agent obtained had not been communicated,

> he posed no substantial threat to Bursey's Sixth Amendment rights. Nor do we believe that federal or state prosecutors will be so prone to lie or the difficulties of proof will be so great that we must always assume *409 not only that an informant communicates what he learns from an encounter with the defendant and his counsel but also that what he communicates has the potential for detriment to the defendant or benefit to the prosecutor's case. [16]

But *Weatherford* left open significant questions regarding the contours of the right to counsel free from government intrusions. The Court did not decide whether a per se violation could be appropriate for some government conduct.

Later, the U.S. Supreme Court considered the appropriate remedy for the government's deliberate intrusion into the attorney-client relationship when the intrusion did not prejudice the defendant's representation. In *United States v. Morrison,* [17] federal drug agents met with the defendant twice without her attorney's knowledge even though they knew she had retained counsel. They sought her cooperation, disparaged her attorney, and suggested that she would face stiffer penalties if she did not cooperate. But she did not cooperate or provide them with any incriminating information about herself or her case, and she kept the same attorney.

The Third Circuit had concluded that this conduct violated the defendant's right to counsel, even if the violation had not tangibly affected her representation. It dismissed the indictment with prejudice. The U.S. Supreme Court unanimously reversed, but it declined to address the government's argument that no Sixth Amendment violation occurs unless its conduct **786 prejudices the defendant. Instead, it assumed that the government had violated the Sixth Amendment but held that the Third Circuit had erred in dismissing the indictment: "[A]bsent demonstrable prejudice, or substantial threat thereof, dismissal of the indictment is plainly inappropriate, even though the violation may have been deliberate." [18]

*410 The Court stated that the remedies for Sixth Amendment violations should be tailored to the injury suffered. So unless "the constitutional infringement identified has had or threatens some adverse effect upon the effectiveness of counsel's representation or has produced some other prejudice to the defense ... there is no basis for imposing a remedy in that proceeding." [19] As with violations of the Fourth and Fifth Amendments, the "remedy in the criminal proceeding is limited to denying the prosecution the fruits of its transgression." [20] Because the defendant had not demonstrated any "transitory or permanent" prejudice, the government's violation did not justify interfering in the proceedings. [21]

So *Morrison* clarified that dismissing a charge is a drastic remedy for a Sixth Amendment violation absent a showing of actual prejudice or a substantial threat of prejudice to the defendant's representation. As noted, however, the Court declined to reach the government's contention that a showing of prejudice would be needed to establish a Sixth Amendment violation. So *Morrison* "left open the possibility that the Court might adopt a per se standard for those state invasions of the lawyer-client relationship that are not supported by any legitimate state motivation." [22]

After the Court decided *Weatherford* and *Morrison,* other federal and state courts carved out a court's duty if the facts showed that investigators or a prosecutor obtained a defendant's privileged attorney-client communications.

(b) Federal Courts of Appeals Decisions

The Sixth Circuit has held that if a prosecutor obtains privileged communications and uses that information at trial to the defendant's detriment, the prosecutor's conduct

**violates** the **\*411** Sixth Amendment.[23] Even though the **prosecutor** had not purposely obtained the information, he had used it to impeach the defendant at trial. The court reasoned that the use of tainted evidence—"*i.e.,* evidence obtained as a result of the intrusion"—is sufficient to demonstrate prejudice and require a new trial.[24] Because the government used the information to the defendant's detriment, the court did not consider whether **state** intrusions are a Sixth Amendment **violation** even without a showing of prejudice.

Later, the Tenth Circuit went further in a case in which the **prosecutor** intentionally learned about a defendant's trial preparations and used the information at trial. It held that a **state's** purposeful intrusion into **privileged** communications is a per se Sixth Amendment **violation**, for which prejudice is presumed: "[W]e hold that when the **state** becomes privy to confidential communications because of its purposeful intrusion into the **attorney**-**client** relationship and lacks a legitimate justification for doing so, a prejudicial effect on the reliability **\*\*787** of the trial process must be presumed."[25]

It is true that statements from other federal appellate courts similarly suggest that a court would treat a **state's** intentional intrusion differently than an unintentional one.[26] But these courts also emphasized that neither the investigating officers nor the **prosecutor** received information relevant to the defendant's trial strategy.[27] Either of those facts should alert a trial court to the threat that the **State** could have used confidential information to the defendant's detriment.

As the U.S. Supreme Court **stated** in *Weatherford,* a Sixth Amendment **violation** is strongly indicated when a **prosecutor** **\*412** knows the details of a defendant's trial strategy or the **State** uses a defendant's confidential information in any way to the defendant's detriment.[28]

So if an investigating officer or a **prosecutor** receives a defendant's confidential trial strategy, the probability of prejudice from a Sixth Amendment **violation** is much higher than with other types of **state** intrusions into the **attorney**-**client** relationship. Accordingly, the District of Columbia Circuit presumed prejudice where the evidence showed that the government's intrusion into a client-attorney relationship resulted in the defendants' trial strategy's being disclosed to the **prosecutor**.[29] The court explained that the right to counsel protects a broader range of interests than the outcome of a trial: "for example, the possibilities of a lesser charge, a lighter sentence, or the alleviation of 'the practical burdens of a trial.' "[30] It concluded that because the prosecution makes a "host of discretionary and judgmental decisions," neither an appellant nor a court could ever sort out how a **prosecutor** had made use of a defendant's confidential trial strategy.[31] Thus, a defendant need not prove that the prosecution actually used such confidential information in its possession:

> Mere possession by the prosecution of otherwise confidential knowledge about the defense's strategy or position is sufficient in itself to establish detriment to the criminal defendant. Such information is "inherently detrimental, ... unfairly advantage[s] the prosecution, and threaten[s] to subvert the adversary system of justice." Further, once the investigatory arm of the government has obtained information, that information may reasonably be assumed to have been passed on to other governmental organs responsible for prosecution. Such a presumption **\*413** merely reflects the normal high level of formal and informal cooperation which exists between the two arms of the executive.[32]

The Third Circuit agreed that a trial was presumptively tainted in a case in which investigating officers and the **prosecutor** received a defendant's confidential trial strategy:

> We think that the inquiry into prejudice must stop at the point where **attorney**-**client** **\*\*788** confidences are actually disclosed to the government enforcement agencies responsible for investigating and prosecuting the case. Any other rule would disturb the balance implicit in the adversary system and thus would jeopardize the very process by which guilt and innocence are determined in our society.[33]

Because the trial had already taken place, the court concluded that the "disclosed information" was already in the public domain and that a **dismissal** of the **indictment** was the only appropriate remedy.[34]

And the First and Ninth Circuits agree that it would be " 'virtually impossible' " for a defendant to show prejudice from disclosures of **privileged** trial strategy to the government because the defendant can only guess at whether and how the information had been used to gain an advantage.[35] But they do not presume that the trial is tainted. Instead, the First Circuit holds that if a defendant presents a prima facie case by showing that investigating officers or the **prosecutors** received confidential defense strategy through an informant, then the government bears the burden to show that there has been and will be no prejudice to the defendant because of disclosure. "The burden on the government is high because to require anything less **\*414** would be to condone intrusions into a defendant's protected **attorney**-**client** communications."[36]

The Ninth Circuit agrees with this burden-shifting scheme but holds that a defendant must show that an informant "acted affirmatively to intrude into the **attorney**-**client** relationship and thereby to obtain the **privileged** information."[37] The court compared the required hearing to the one required under *Kastigar v. United States*[38] to ensure that the government has not used evidence tainted by a Fifth Amendment **violation** in a later prosecution against a former witness whom it compelled to give self-incriminating testimony under a grant of use immunity. It explained that in a *Kastigar* proceeding, the prosecution must show that it derived its evidence from legitimate, independent sources. It applied the same burden when the government acquires a defendant's confidential communications:

> [T]he government must present evidence, and must show by a preponderance of that evidence, that "all of the evidence it proposes to use," and all of its trial strategy, were "derived from legitimate independent sources." ... In the absence of such an evidentiary showing by the government, the defendant has suffered prejudice.[39]

Relying on its analysis of *Kastigar*, the Ninth Circuit clarified that the government's trial strategy includes the following decisions: "decisions about the scope and nature of the investigation, about what witnesses to call (and in what order), about what questions to ask (an in what order), about what lines of defense to anticipate in presenting the case in chief, and about **\*\*789** what to save for possible rebuttal."[40]

**\*415** (c) **State** Appellate Court Decisions

**State** courts have required similar procedures under a rebuttable presumption of prejudice. In *State v. Lenarz,*[41] **state** investigators obtained the defendant's detailed trial strategy from a forensic search of his computer. The **privileged** communications, which the trial court had specifically protected in an order, included facts relevant to the complaining witness' credibility and the adequacy of the police investigation. Investigators provided the confidential information to the **prosecutor**, who read it more than a year before the trial. The Connecticut Supreme Court held that a rebuttable presumption of prejudice arose from these circumstances, "regardless of whether the invasion into the **attorney**-**client** **privilege** was intentional."[42] The court further held that the **State** can only rebut the presumption of prejudice by clear and convincing evidence that no person with knowledge of the communication was involved in the investigation or the prosecution.[43] Alternatively, the **State** could show that the communications contained minimal **privileged** information or that it had access to all the information from independent sources.[44] But if the **State** fails to rebut the presumption, the trial court must, sua sponte, provide immediate relief to prevent prejudice to the defendant.[45]

In *Lenarz,* the **prosecutor** could not rebut the presumption of prejudice because he had read the information more than a year before the trial. The court reasoned that even if the **prosecutor** did not use the information to develop new evidence, the **State** could not show by clear and convincing evidence that he did not use the information for trial preparations. Those preparations included his "discussions with witnesses and **\*416** investigators, or his decisions on jury selection, witness selection, examination of witnesses, or any of the other innumerable decisions that he was required to make ... for and during trial."[46] Because the **prosecutor** tried the case to conclusion, the taint would be irremediable on remand and the charges had to be **dismissed**.[47]

The court recognized that **dismissal** was a drastic remedy. But it reasoned that even if a new **prosecutor** did not see the defendant's trial strategy, the first **prosecutor** could have already revealed it to witnesses and investigators. And the public record of the first trial would show the first **prosecutor's** selection and examination of witnesses to

anticipate and neutralize any cross-examination of them.[48] So the court concluded that even a new trial with a different **prosecutor** would be tainted by the constitutional **violation** in the first trial.[49] In sum, because the **prosecutor** reviewed a "detailed, explicit road map of the defendant's trial strategy," even if the trial court had considered the issue before trial, it was unlikely that the appointment of a new **prosecutor** would have been an adequate remedy.[50]

**\*\*790** More recently, the Washington Supreme Court held that the **State** could rebut the presumption of prejudice arising from a detective's eavesdropping on a defendant's conversations with the defendant's attorney.[51] After the defendant's conviction, he moved for a new trial **based on** a witness' purported recantation of her testimony. But the witness later told the **prosecutor** that she was lying in the videotaped recantation. The **prosecutor** asked a detective to listen to the defendant's telephone calls from jail, and the detective also listened to calls made to the **\*417** defendant's attorney. The **prosecutor** claimed that the detective did not disclose the contents of these conversations to him, but it was unclear whether the witness had contacted the **prosecutor** because of the detective's eavesdropping.

The court had previously presumed prejudice arising from eavesdropping during trial but had not decided whether the **State** could rebut the presumption. Relying on 🚩 *Weatherford,* it concluded that the extreme remedy of **dismissing** the charges was unwarranted in the rare case when there was no possibility of prejudice. But because the constitutional right to privately communicate with an attorney was foundational and because only the **State** knew how it had used the information, it held that the **State** must prove beyond a reasonable doubt that the intrusion did not prejudice the defendant. The court rejected the **State's** reliance on the **prosecutor's** statement that he had not received the information: "[R]egardless of whether the **prosecutor** himself knew of the content of the conversations, he may have relied on evidence gathered by [the detective] as part of an investigation aided by the eavesdropping."[52] The court remanded the cause for further proceedings with the right to discovery.

### 4. THE PROSECUTION'S POSSESSION OF BAIN'S CONFIDENTIAL TRIAL STRATEGY PRESUMPTIVELY **VIOLATED** BAIN'S SIXTH AMENDMENT RIGHT TO COUNSEL AND REQUIRED AN EVIDENTIARY HEARING

The above cases contain common threads that apply here. For the majority of courts, a defendant's confidential trial strategy in the possession of a **prosecutor** or investigating officer is presumptively prejudicial. A minority of federal courts do not presume prejudice, but they require the government to prove the absence of prejudice. In either circumstance, courts agree that a defendant cannot know how the prosecution might have used his or her confidential **attorney**-**client** information to the defendant's detriment. The courts that presume **\*418** prejudice are split on whether the presumption is rebuttable. Some courts hold that this type of government intrusion is a per se Sixth Amendment **violation** that requires a reversal of the defendant's convictions—and **dismissal** of the charges if a trial has already been completed. Other courts hold that the **State** can rebut the presumption of prejudice. Those that do not presume prejudice hold that the burden of proof shifts to the government when the defendant presents a prima facie case of a Sixth Amendment **violation**. But the standard for showing that the defendant was not prejudiced is high. The **State** must prove that it did not use the information for any purpose to the defendant's detriment.

#### (a) Presumption of Prejudice Applies but Is Rebuttable

**[12]** We agree with courts that hold a presumption of prejudice arises when the **State** becomes privy to a defendant's confidential **\*\*791** trial strategy. Federal courts are consistent on two points: (1) *any* use of the confidential information to the defendant's detriment is a Sixth Amendment **violation** that taints the trial and requires a reversal of the conviction; *and* (2) a defendant cannot know how the prosecution could have used confidential information in its possession. We believe these holdings cannot be reconciled except through a presumption of prejudice.

**[13]** But we hold that the presumption is rebuttable—at least when the **State** did not deliberately intrude into the **attorney**-**client** relationship. As other courts have suggested, some disclosures of confidential information to the **State** might be insignificant. Or the **State** could prove that it did not use the confidential information in any way to the defendant's detriment. For example, the **State** could prove that it did not derive its evidence and trial strategy from the disclosure of a defendant's trial strategy by showing that it had legitimate, independent sources for them.[53]

**\*419** Regarding the **State's** burden of production, we are persuaded by the Ninth Circuit's adoption of its *Kastigar* requirements for potential Sixth Amendment **violations**. Those requirements ensure that the prosecution does not **violate** a defendant's Fifth Amendment rights when the defendant has no way of knowing how the government could have used his or her previously compelled self-incriminating testimony. The *Kastigar* requirements are clearly relevant to potential Sixth Amendment **violations** of this type. So we clarify that the **State's** trial strategy includes its decisions about witness selection and examinations and about the type of defenses that it should anticipate.

(b) Standard of Proof Is Clear and Convincing Evidence

Because we conclude that a disclosure of a defendant's trial strategy to the prosecution is presumptively prejudicial, we do not agree with the Ninth Circuit's preponderance of the evidence standard of proof.

[14]  The standard of proof functions to instruct fact finders about the degree of confidence our society believes they should have in the correctness of their factual conclusions for a particular type of adjudication.[54] It "serves to allocate the risk of error between the litigants and to indicate the relative importance attached to the ultimate decision."[55]

The standards of proof applied across the legal spectrum generally fall into three categories.[56] The preponderance of the evidence standard is most often applied in civil disputes between private parties. Because the public has minimal interest in the outcome, a preponderance standard appropriately requires the parties to roughly share the risk of error.[57] But when a party's interests in a civil proceeding are substantial and involve more than the mere loss of money, but do not involve a criminal conviction, due process is satisfied by an intermediate standard of proof like "clear and convincing" evidence.[58] Finally, in a criminal case, due process **\*\*792 \*420** requires the prosecution to prove, beyond a reasonable doubt, every factual element necessary to constitute the crime charged.[59]

[15] In cases involving individual rights, whether criminal or civil, the principle consideration in determining the proper standard of proof is whether the standard minimally reflects the value society places on individual liberty, because the "function of legal process is to minimize the risk of erroneous decisions."[60] "The individual should not be asked to share equally with society the risk of error when the possible injury to the individual is significantly greater than any possible harm to the **state**."[61]

Applying these principles, we conclude that a mere preponderance standard is inappropriate. Both the **State** and the public have a substantial interest in the fair administration of criminal justice and protecting a defendant's constitutional rights. More particularly, our society necessarily places a high value on ensuring that criminal trials are not tainted by disclosures that unfairly advantage the prosecution and threaten to subvert the adversary system of criminal justice. And requiring a defendant to share a roughly equal risk of error in determining whether the **State** used his confidential information to his detriment does not reflect those values.

Conversely, the "beyond a reasonable doubt" standard is a criminal trial protection that should not apply because the **State** **\*421** is not proving the elements of a charged offense. And we recognized that this strictest criminal standard does not apply to the "admissibility of evidence or ... the prosecution's burden of proof at a suppression hearing when evidence is challenged on constitutional grounds."[62]

[16] But unlike the evidentiary issues presented in a suppression hearing, we have determined that the **State's** possession of a defendant's confidential trial strategy is presumptively prejudicial. And that presumed prejudice would infect more than the admission of disputed evidence. So we hold that when a presumption of prejudice arises because the **State** has obtained a defendant's confidential trial strategy, the **State** must prove by clear and convincing evidence that the defendant was not prejudiced by the disclosure.

Finally, we recognize other courts' concerns that after a completed trial, the prosecution's tainted trial strategy will be available in any new prosecution simply by examining the public record. But absent evidence showing that the attorney who prosecuted the **State's** charges possessed a defendant's confidential trial strategy,[63] we conclude that **dismissal** of the charges is not necessary if the **State** satisfies the burden of proof that we have set out. Because the **State** must prove that the disclosure did not prejudice the defendant in the first

prosecution, a later prosecution will not be tainted by the record of the first trial.

### (c) Court Must Sua Sponte Conduct an Evidentiary Hearing to Ensure Trial Is Not Tainted

As our analysis implies, an evidentiary hearing is required if the State is to have an opportunity to rebut a presumption of prejudice. We additionally conclude that ***793** this case illustrates the *422 necessity of a trial court independently conducting an evidentiary hearing when it learns that a defendant's confidential trial strategy has been disclosed to the State—even if the defendant has not raised a Sixth Amendment violation. A trial court must ensure that a defendant's right to effective representation is not infected by disclosures of confidential communications that threaten that right.

[17] Here, the court's sorting procedures were inadequate for that task. It is true that the court intended to ensure that Marsh, the special prosecutor who ultimately tried the case, did not receive Bain's confidential trial strategy. But the sorting procedures could not ensure that before the court appointed Marsh, the State had not used the information to develop evidence or witnesses or to otherwise gain an advantage or make decisions detrimental to Bain. Notably, the county attorney's office had possession of Bain's confidential trial strategy for 2 months, followed by the Attorney General's possession of the information for 8 months.

Nor did the court's sorting procedure ensure that none of the preceding prosecutors had communicated Bain's confidential trial strategies to Marsh. Additionally, we are concerned by statements in the record showing that Bain's confidential trial strategy was available to Homolka, despite Lierman's statement to the court that he had sealed the documents so that no one else could obtain them. Finally, we have been hampered in our review by the absence of the most significant evidence: the documents containing Bain's confidential information.

[18] So we hold that when a court is presented with evidence that the State has become privy to a defendant's confidential trial strategy, it must sua sponte conduct an evidentiary hearing that requires the State to prove that the disclosure did not prejudice the defendant, and it must also give the defendant an opportunity to challenge the State's proof. Because the court's procedures failed to ensure that Bain received a fair trial, we vacate his convictions. Our decision does not necessarily *423 preclude the State from seeking to try Bain again on these charges. But before the district court permits a retrial, it must conduct an evidentiary hearing, as set out above, to ensure that the trial will not be tainted.

### VI. CONCLUSION

We conclude that if a trial court is presented with evidence that the State has learned of a defendant's confidential trial strategy, a presumption of prejudice from a Sixth Amendment violation arises. This presumption requires the court to independently conduct an evidentiary hearing even if the defendant has not raised the issue. The presumption is rebuttable, at least when the State did not deliberately intrude into the attorney-client relationship. At the evidentiary hearing, the State must prove by clear and convincing evidence that the disclosure did not prejudice the defendant and the court must give the defendant an opportunity to challenge the State's proof. Because the court's procedures were inadequate to ensure that Bain received a fair trial, we vacate his convictions. Because we vacate Bain's convictions and do not know whether the State can prove that a new trial would not be tainted, we do not address his remaining assignments of error.

REVERSED AND VACATED.

**All Citations**

292 Neb. 398, 872 N.W.2d 777

### Footnotes

1     State v. Narcisse, 260 Neb. 55, 615 N.W.2d 110 (2000).

2   See, e.g., *Lockhart v. Fretwell,* 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993); *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

3   See, e.g., *State v. Edwards,* 284 Neb. 382, 821 N.W.2d 680 (2012); *State v. Schlund,* 249 Neb. 173, 542 N.W.2d 421 (1996).

4   See, *Wheat v. United States,* 486 U.S. 153, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988); *Wood v. Georgia,* 450 U.S. 261, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981); *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); *State v. Aldaco,* 271 Neb. 160, 710 N.W.2d 101 (2006); *State v. Hudson,* 208 Neb. 649, 305 N.W.2d 359 (1981).

5   See *Wood, supra* note 4.

6   See, e.g., *Edwards, supra* note 3, citing *Cuyler, supra* note 4.

7   *United States v. Rosner,* 485 F.2d 1213, 1224 (2d Cir.1973), citing *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). Accord, e.g., *U.S. v. Dyer,* 821 F.2d 35 (1st Cir.1987); *United States v. Brugman,* 655 F.2d 540 (4th Cir.1981); *United States v. Levy,* 577 F.2d 200 (3d Cir.1978); *People v. Knippenberg,* 66 Ill.2d 276, 362 N.E.2d 681, 6 Ill.Dec. 46 (1977). See, also, *Weatherford v. Bursey,* 429 U.S. 545, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977).

8   See, e.g., *Howell v. Trammell,* 728 F.3d 1202 (10th Cir.2013); *Clutchette v. Rushen,* 770 F.2d 1469 (9th Cir.1985).

9   *Weatherford, supra* note 7.

10  See *id.*

11  *Id.*

12  *Id.,* 429 U.S. at 552, 97 S.Ct. 837.

13  *Id.,* 429 U.S. at 554, 97 S.Ct. 837.

14  *Id.,* 429 U.S. at 555, 97 S.Ct. 837.

15  *Id.,* 429 U.S. at 558, 97 S.Ct. 837.

16  *Id.,* 429 U.S. at 556–57, 97 S.Ct. 837.

17  *United States v. Morrison,* 449 U.S. 361, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981).

18  *Id.,* 449 U.S. at 365, 101 S.Ct. 665.

19  *Id.*

20  *Id.,* 449 U.S. at 366, 101 S.Ct. 665.

21  *Id.*

22  3 Wayne R. LaFave et al., Criminal Procedure § 11.8(b) at 848–49 (3d ed. 2007).

23  See *Bishop v. Rose,* 701 F.2d 1150 (6th Cir.1983).

24  *Id.* at 1156.

25  See *Shillinger v. Haworth,* 70 F.3d 1132, 1142 (10th Cir.1995).

26  See, *U.S. v. Davis,* 226 F.3d 346 (5th Cir.2000); *United States v. Ginsberg,* 758 F.2d 823 (2d Cir.1985); *United States v. Costanzo,* 740 F.2d 251 (3d Cir.1984).

27  See *id.*

28  See *Weatherford, supra* note 7.

29  See *Briggs v. Goodwin,* 698 F.2d 486 (D.C.Cir.1983), *vacated on other grounds* 712 F.2d 1444 (D.C.Cir.1983).

30  *Id.* at 494.

31  *Id.*

32  *Id.* at 494–95, quoting *Weatherford, supra* note 7.

33  See *Levy, supra* note 7, 577 F.2d at 209.

34  See *id.* at 210.

35  See *U.S. v. Danielson,* 325 F.3d 1054, 1071 (9th Cir.2003). Accord *United States v. Mastroianni,* 749 F.2d 900 (1st Cir.1984).

36  *Mastroianni, supra* note 35, 749 F.2d at 908.

37  *Danielson, supra* note 35, 325 F.3d at 1071.

38  See *Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972).

39  *Danielson, supra* note 35, 325 F.3d at 1072.

40  *Id.* at 1074.

41  *State v. Lenarz,* 301 Conn. 417, 22 A.3d 536 (2011).

42  *Id.* at 437, 22 A.3d at 549.

43  *Lenarz, supra* note 41.

44  *Id.*

45  *Id.*

46  *Id.* at 440 n. 17, 22 A.3d at 551 n. 17.

47  *Lenarz, supra* note 41.

48  *Id.*

49  *Id.*

50  *Id.* at 451, 22 A.3d at 558.

51  See *State v. Fuentes,* 179 Wash.2d 808, 318 P.3d 257 (2014).

52  *Id.* at 822, 318 P.3d at 263.

53  See *Kastigar, supra* note 38.

54  See *Smeal Fire Apparatus Co. v. Kreikemeier,* 279 Neb. 661, 782 N.W.2d 848 (2010), *disapproved in part on other grounds, Hossaini v. Vaelizadeh,* 283 Neb. 369, 808 N.W.2d 867 (2012).

55  *Addington v. Texas,* 441 U.S. 418, 423, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979).

56  See *id.*

57  See *id.*

58  See, *Addington, supra* note 55; *Smeal Fire Apparatus Co., supra* note 54.

59  *Smeal Fire Apparatus Co., supra* note 54.

60  *Addington, supra* note 55, 441 U.S. at 425, 99 S.Ct. 1804.

| | |
|---|---|
| 61 | *Id.,* 441 U.S. at 427, 99 S.Ct. 1804. |
| 62 | *Lego v. Twomey,* 404 U.S. 477, 486, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972). |
| 63 | See *Lenarz, supra* note 41. |

---

**End of Document**　　　© 2022 Thomson Reuters. No claim to original U.S. Government Works.